ANNA M. COLALUCA *v.* HOWARD S. IVES, HIGHWAY COMMISSIONER

HOWARD S. IVES, HIGHWAY COMMISSIONER *v.* ANNA M. COLALUCA

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, JS.

Argued April 4—decided May 9, 1963

*Harry Cooper*, with whom was *Harry G. Kaminsky*, for the appellant (plaintiff in the first case and defendant in the second).

*Jack Rubin*, assistant attorney general, with whom, on the brief, was *Albert L. Coles*, attorney general, for the appellee (defendant in the first case and plaintiff in the second).

KING, J. Anna M. Colaluca, defendant in the action for specific performance and plaintiff in the condemnation appeal, for convenience hereinafter referred to as the plaintiff, owned a tract of land in Hartford on which she and her husband operated a restaurant. The tract was in the line of a contemplated east-west highway which is now actually under construction. The city of Hartford, prior owner of the land by virtue of strict foreclosure of tax liens, had sold the premises to the plaintiff on September 14, 1955, at public auction, for $35,000. The deed contained the option covenant quoted in

the footnote.[1]  When the property was purchased, the plaintiff and her husband, who to a considerable extent acted as her business agent, were fully aware of the covenant and its effect and expected and intended to be bound by it.  Doubtless, the purchase price paid at the auction was less than it would have been but for inclusion in the deed of the option covenant.

The highway commissioner originally proceeded to condemn the property under General Statutes § 13-145, assessing the plaintiff's damages at $35,000.  The plaintiff appealed to the Superior Court under § 13-150, seeking a reassessment of damages and alleging that the $35,000 assessment was inadequate.  Thereupon, the attorney general entered the case.  Prior to any hearing on the appeal, although after reference to a state referee, the attorney general decided that the condemnation procedure should be abandoned and that the commissioner should substitute an action for specific performance of the option covenant.  The commissioner then notified the plaintiff, pursuant to the terms of the covenant, that the state was exercising its option to purchase for $35,000.  Subsequently, that sum was tendered to, and refused by, the plaintiff.  The commissioner then instituted an action for the specific performance of the option agreement.  Both the condemnation proceedings, which the plaintiff claimed could not be discontinued, and the specific performance action were tried together,

[1] "As part consideration for this deed the grantee agrees for herself, her heirs and assigns, that the City of Hartford or the State of Connecticut shall have the right to purchase said premises, with all improvements thereon, for the sum of $35,000, in the event said premises shall be required for any public purpose, at any time within twenty (20) years from the date hereof, upon giving the owner of record sixty (60) days' notice in writing to that effect."

and judgment was rendered for the commissioner in each case. The plaintiff appealed from the judgments, and her appeals were combined. Her basic claim is that the commissioner must acquire the property by condemnation and must pay her the fair value of the property condemned without diminution by reason of the option covenant, which she claims is invalid for a number of reasons. Thus, she is attempting to secure a profit amounting to the approximate difference between $35,000 and the present fair value of the property unencumbered by the option covenant in her deed of acquisition. We first consider the various grounds on which she claims that the option covenant is invalid.

The plaintiff claims that the tax collector, while admittedly having authority to sell the property, had no authority to include in the deed the option covenant, at least insofar as it purports to give rights to the state, and that in that respect the covenant is invalid. There is no evidence of any grant from the city of Hartford to its tax collector of express authority to insert such a provision in the deed, and we may assume, without so deciding, that this claim of the tax collector's lack of authority is sound. The action of the tax collector in inserting the option covenant was not expressly forbidden, inherently illegal or against public policy. Note, 122 A.L.R. 1370. The plaintiff is not questioning the general power of the tax collector to sell the land on behalf of the city. She claims that the deed in all other respects is valid and, necessarily, that it was effective to convey title to the property to her. She admits that she freely consented to, and understood, the particular provision in the deed which she now claims to be invalid. The city parted with the land, and it is recited in

the deed that it accepted as part consideration therefor the covenant of the plaintiff to convey the property either to it or to the state upon proper demand. Under the facts in this case, the plaintiff cannot accept and enjoy the benefits of the deed in all other respects but deny the authority of the tax collector to insert the option covenant in an otherwise valid deed. *Hartford* v. *Connecticut Co.,* 107 Conn. 312, 339, 140 A. 734; *City National Bank* v. *Bridgeport,* 109 Conn. 529, 545, 147 A. 181; *Foster* v. *Atwater,* 42 Conn. 244, 250, 254; 16 Am. Jur., Deeds, § 358; 38 Am. Jur., Municipal Corporations, § 514; 10 McQuillin, Municipal Corporations (3d Ed.) § 29.133; note, 122 A.L.R. 1370, 1372.

The plaintiff also claims that, even if we assume that the covenant is valid as far as the tax collector's authority to insert it was concerned, the commissioner could not prevail in the specific performance action because he was not a third party beneficiary entitled to enforce the covenant. The deed itself clearly indicates on its face that it was the intention of the parties to create a direct obligation from the plaintiff to the city and the state. Since the land is sought for a state highway, the city of course is making no claim under the option covenant. The commissioner, as agent for the state in acquiring land for highway purposes, represented the state in exercising the option covenant. General Statutes § 13-105; 14 Am. Jur., 514, Covenants, Conditions and Restrictions, § 39. Thus, the commissioner was entitled to enforce the covenant as a third party beneficiary. *Congress & Daggett, Inc.* v. *Seamless Rubber Co.,* 145 Conn. 318, 324, 142 A.2d 137; *Baurer* v. *Devenis,* 99 Conn. 203, 206, 211, 121 A. 566; cf. *Knapp* v. *New Haven Road Construction Co.,* 150 Conn. 321, 324, 189 A.2d 386;

*Colonial Discount Co.* v. *Avon Motors,* 137 Conn. 196, 202, 204, 75 A.2d 507.

The plaintiff further claims that the city, in effect, made a gift to the state, that the commissioner has no authority to accept such a gift on behalf of the state, and therefore, for this reason, he may not exercise any rights as a third party beneficiary. We have no occasion to consider this claim. The gift, if there was any, was from the city of Hartford to the state. The plaintiff, in her capacity as defendant in the specific performance action, has no standing to complain of the so-called unauthorized acceptance of a gift on the part of the commissioner, since it cannot harm her in any manner. Through this claim of gift, the plaintiff is attempting to obtain for herself the amount in excess of $35,000 which, if her claim of gift was well-founded, might perhaps equitably belong to the city of Hartford. Obviously, no rights of the city of Hartford could in any way be redressed by making any payment of money to the plaintiff.

One further ground of claimed unenforceability of the option covenant remains. This ground does not concern the deed to the plaintiff, or the covenant, as such. It is claimed to result from the condemnation procedure originally instituted by the commissioner. At all times, he intended to acquire the property for $35,000, the price fixed in the option covenant. But instead of proceeding directly to exercise his rights under that covenant, he initially instituted condemnation proceedings under General Statutes § 13-145, and pursuant thereto, on October 21, 1960, filed a certificate of condemnation, assessing the plaintiff's damages at $35,000, the identical amount established in the option covenant. This procedure was followed apparently as a means

of getting the matter before a referee for approval as required by § 13-105 when, as was the case here, the amount to be paid for the property exceeds $3000. See *Kratochvil* v. *Cox,* 129 Conn. 246, 250, 27 A.2d 382. The plaintiff received a copy of the notice of condemnation, and on November 18, 1960, $35,000 was deposited pursuant to the provisions of § 48-11, in order to make that amount immediately available to the plaintiff and thereby stop the running of interest on the award in her favor. See *Salgreen Realty Co.* v. *Ives,* 149 Conn. 208, 212, 177 A.2d 673, in which our statutory procedure for condemnation proceedings by a highway commissioner is outlined and explained. On December 29, 1960, before any hearing by the referee on the reassessment of the plaintiff's damages, the attorney general, having reached the decision that the commissioner should have proceeded to enforce the option covenant instead of instituting condemnation proceedings, applied to the court for permission to withdraw the condemnation certificate. Subsequently, when the action for specific performance and the appeal in the condemnation proceedings were tried together, the court, over the objections of the plaintiff, allowed the withdrawal of the condemnation certificate, thereby in effect authorizing the abandonment of the condemnation proceedings, and rendered judgment for the commissioner to that effect. In the specific performance action, the court granted specific performance of the option covenant.

The plaintiff claims that the commissioner could not withdraw the condemnation proceeding because, under General Statutes § 13-145, the "taking" of the property was complete upon the filing of the certificate, the rights of both parties thereupon

became vested, and discontinuance was thereafter barred as a matter of law. In other words, the plaintiff claims that when the "taking" was complete, which she claims was at the moment of the filing of the certificate, she had a full right to damages under the condemnation procedure, pursuant to the rule of cases such as *Bohannan* v. *Stamford,* 80 Conn. 107, 109, 67 A. 372.

It is important to note that there was never any abandonment by the commissioner of efforts to acquire the land in question for highway purposes. The plaintiff was not left with land on her hands which she supposed had been finally condemned. The only abandonment in this case, if it can be said that there was any, was the abandonment of the procedure of condemnation for that of acquisition under the option covenant in the deed. The situation was similar to that in *Kratochvil* v. *Cox,* supra, 248. It is also important to note that at all relevant times the plaintiff supposed that the option covenant in the deed was valid and that she was obligated to transfer the property to the state for the price of $35,000. Only when she consulted counsel and was advised of the possible efficacy of the claim she is now making did it occur to her that there might be an opportunity to invalidate the covenant and obtain an unexpected profit. Her expenditure of money in the purchase of other property could not, under these circumstances, be the basis of any equitable estoppel.

We may assume, without deciding, that the filing of the certificate by the commissioner constituted a "taking" of the property which not only disabled him from abandoning its acquisition by condemnation but also gave the plaintiff a right, protected by the constitution, to receive just damages. We

make this assumption, notwithstanding the fact that no final certificate of taking was filed in the land records, although the filing of such a certificate, under § 13-149 of the General Statutes, is a prerequisite to the vesting in the commissioner of title to property condemned. The basic question still remains: What are the just damages due the plaintiff in this case?

Here, the holder of the option is the condemnor himself. We are not concerned with the value, to the condemnor, of his option. We are concerned only with the effect of the option on the compensation which the plaintiff should justly receive for her property.[2] Under article first, § 11, of the Connecticut constitution, no property shall be taken for a public use without just compensation. This means a fair equivalent in money for the property taken from the condemnee as nearly as its nature will permit. Ordinarily, although not necessarily, this is the market value of the property taken. But the question of what is just compensation is an equitable one rather than a strictly legal or technical one. The paramount law intends that the condemnee shall be put in as good condition pecuniarily by just compensation as he would have been in had the property not been taken. *Winchester* v. *Cox,* 129 Conn. 106, 114, 26 A.2d 592; *Nicholson* v. *Weaver,* 194 F.2d 804, 807 (9th Cir.).

Had the property not been "taken" under the condemnation procedure, the plaintiff would have

---

[2] "Sec. 48-21. NOTICE TO ENCUMBRANCERS OF LAND TAKEN FOR PUBLIC USE. PAYMENTS. Notice shall be given to all persons appearing of record as holders of any . . . encumbrance on any real estate . . . [which is condemned]; and the amount due any such . . . encumbrancer . . . shall be paid to him . . . before any sum is paid to any owner of such property." See *Palo* v. *Rogers,* 116 Conn. 601, 604, 165 A. 803.

been under an obligation, for the reasons already stated, to convey the property to the commissioner, on sixty days' notice, for $35,000 in accordance with the option covenant. Consequently, even if the property was "taken" by the commissioner, her damages would be, and could be, only $35,000, since that was the full value of her interest in the property at the time of the claimed taking. See *Stevens* v. *Norfolk,* 46 Conn. 227, 230; *McGowan* v. *Milford,* 104 Conn. 452, 456, 133 A. 570. Any greater sum would be, not just compensation, but an unwarranted gift of public funds to a private individual. Whether or not the commissioner was procedurally correct in initially instituting condemnation proceedings for the acquisition of the plaintiff's property is a matter we need not consider. The plaintiff has no basis for a claim that she has been harmed or misled by the change in procedure brought about by the attorney general's office. Even if the trial court was technically in error in allowing the withdrawal of the condemnation certificate and the abandonment of the condemnation proceedings, the error was harmless, since the plaintiff, under the specific performance action, was required to do only what she was equitably obligated to do, and she received the full amount which she could equitably have obtained under the condemnation proceeding had it been pursued to a conclusion.

There is no error in either case.

In this opinion the other judges concurred.