HARR v. COOLBAUGH.

1. Easements—Possession of Servient Estate—Notice.
   Possession by owner of estate subject to an easement, not being
   inconsistent with easement, was not adverse and not notice
   to the owner of the easement of servient estate owner's claim
   of title to the right-of-way by unrecorded deed.

2. Same—Use of Servient Estate.
   The owner of a servient estate may make any use of the premises
   not inconsistent with the easement.

3. Vendor and Purchaser—Notice—Recording of Deed—Presump-
   tions.
   The presumption of law is that a subsequent purchaser who has
   his deed first recorded is a bona fide purchaser without no-
   tice until the contrary is made to appear (CL 1948, § 565.29).

4. Same—Purpose of Recording Statute—Title.
   The registry or recording laws for the purpose of protecting an
   innocent purchaser give him what he supposed, and from an
   examination of the records had a right to suppose, he was
   acquiring by his purchase and, to this extent, cut off the pre-
   vious purchaser who negligently failed to record his convey-
   ance (CL 1948, § 565.29).

5. Same—Notice—Examination of Records—Diligence of Pur-
   chaser.
   An examination of the records is the extent of the diligence to
   be exercised by a purchaser in good faith and without actual
   notice who thereby and by his prior recordation becomes pro-
   tected in his title (CL 1948, § 565.29).

---

References for Points in Headnotes

[2] 17 Am Jur, Easements § 96.
[3, 6] 55 Am Jur, Vendor and Purchaser § 780.
[3, 6] Presumption and burden of proof as regards good faith and
   consideration on part of purchaser or one taking encumbrance
   subsequent to unrecorded conveyance or encumbrance. 107 ALR
   502.
[4, 5, 7, 8] 45 Am Jur, Records and Recording Laws §§ 81, 82.
[7] 55 Am Jur, Vendor and Purchaser §§ 660, 705.

6. EASEMENTS—VENDOR AND PURCHASER—FRAUD NOT PRESUMED.
   Purchasers of land are not obligated to presume that their grant-
   or would intentionally commit a fraud upon them by deed-
   ing to them an easement without right so to do.

7. SAME—TITLE—NOTICE—PRIOR RECORDING OF DEED.
   Circumstances that easement across defendant's land remained
   unobstructed while plaintiffs were purchasing the dominant
   estate, an adjoining lot, which easement was a way of neces-
   sity and there was nothing then of record to defeat the ease-
   ment at time purchase was being effectuated and fact that
   plaintiffs were unaware of prior unrecorded deed to defend-
   ants constituted plaintiffs purchasers in good faith without
   notice and rendered it unnecessary to make inquiries about
   unrecorded deed from plaintiffs' grantor to defendants and
   where plaintiffs recorded their deed describing the easement
   prior to time defendants put their deed on record, plaintiffs
   acquired title to, and right to use of, the easement (CL 1948,
   § 565.29).

8. VENDOR AND PURCHASER—NOTICE—PURPOSE OF RECORDING—TITLE.
   The purpose of the recording law is that the true state of the
   title be represented in the public records and to protect an
   innocent purchaser (CL 1948, § 565.29).

   SHARPE, J., dissenting.

Appeal from Jackson; Simpson (John), J. Sub-
mitted March 4, 1953. (Docket No. 90, Calendar No.
45,279.) Decided June 8, 1953.

Bill by Lester V. Harr and wife against Clifford
Coolbaugh and others to restrain interference with
right-of-way. Decree for plaintiffs. Defendants ap-
peal. Affirmed.

*Joseph A. Navarre,* for plaintiff.

*Dudley & Rogers,* for defendants.

SHARPE, J. (*dissenting*). In the instant case plain-
tiffs filed a bill of complaint in the circuit court of
Jackson county in which they seek an injunction to
restrain defendants from interfering with a so-called

right-of-way across the lands of defendants. Plaintiffs Harr own a piece of property in which they acquired title by deed in 1943. Defendants Wells own a piece of property directly east of the Harr property. The Wells acquired title to their property in 1948. Defendants Coolbaugh are the owners of a piece of property immediately east of the Wells' property. The right-of-way in question is a strip of land 32 feet wide which runs down the east side of the Wells' property and then along the south side of the Wells' property. It appears that in July, 1924, Carl, Ethel and Roy Coolbaugh became the owners of all 3 pieces of property above mentioned. In the same month they mortgaged the property, now owned by plaintiffs Harr, to Mary Barringer Kress. The mortgage contained a description of a right-of-way across the lands now owned by defendants Wells. In 1936, Ethel A. Coolbaugh and Roy Coolbaugh being the owners of the Harr and Wells properties conveyed by quitclaim deed the Wells property to Clifford Coolbaugh. This quitclaim deed contained no reservation or exception of any right-of-way. This deed was not recorded until January 3, 1944.

On February 11, 1937, Ethel A. Coolbaugh and Roy Coolbaugh deeded to Jennie and Agnes Ruede the same property described in the mortgage. This deed was recorded January 19, 1938. On May 14, 1943, Agnes Ruede for herself, and as survivor of Jennie Ruede, gave a warranty deed to the Harrs, plaintiffs herein. This deed was recorded May 15, 1943. From February 1, 1936 to November 29, 1948, Clifford Coolbaugh and his wife occupied the Wells property. On November 29, 1948, they deeded the property to Wells and wife.

This deed contained no reservation of a right-of-way. When the Harrs took possession of their property shortly after May 14, 1943, they began using

the right-of-way. They used the right-of-way for 5 years (1943–1948). On November 29, 1948, Clifford Coolbaugh and wife conveyed the property to the Wells and they have occupied it since that date. When plaintiffs attempted to use the right-of-way in 1943, they were informed by Clifford Coolbaugh that they had no right to use the right-of-way.

The cause came on for trial and at its conclusion the trial court entered a decree granting plaintiffs a perpetual right-of-way across the Wells property. Defendants appeal and urge that the mortgage from Ethel A. Coolbaugh and Roy Coolbaugh to Mary Barringer Kress did not convey or transfer title to an easement or right-of-way to Mary Barringer Kress for the reason that one cannot have an easement over one's own property. When the mortgage was given to Mary Barringer Kress there was no transfer of the title of the land to the mortgagee. In *McKeighan* v. *Citizens Commercial & Savings Bank of Flint,* 302 Mich 666, we said:

"The rule is well-settled that a real-estate mortgage does not transfer title of the land to the mortgagee, but rather the mortgagee has a lien on the land to secure the debt."

See, also, *Plasger* v. *Leonard,* 312 Mich 561.
In 28 CJS, pp 623, 624, it is said:

"As an easement is a right or advantage which one has in the lands of another, it is distinct from the ownership of the land to which it is attached, and it necessarily follows that a man cannot have an easement in his own lands. Ordinarily, an owner cannot create an easement in part of his property for the benefit of other parts thereof."

In *Bricault* v. *Cavanaugh,* 261 Mich 70, we held that an easement is extinguished when the same person becomes the owner of both pieces of property, and it is also the rule that one cannot have an ease-

ment in one's own land. See *Morgan* v. *Meuth*, 60 Mich 238; *Bricault* v. *Cavanaugh, supra; Dimoff* v. *Laboroff*, 296 Mich 325; *von Meding* v. *Strahl*, 319 Mich 598; *Bales* v. *Butts*, 309 Mo 142 (274 SW 679); and *Oldfield* v. *Smith*, 304 Mass 590 (24 NE2d 544).

It necessarily follows from the above authorities that the mortgage, given by Carl, Ethel and Roy Coolbaugh in 1924, did not create an easement or right-of-way across the property now owned by Wells and wife.

If a right-of-way was created it was created in 1937, when Ethel A. Coolbaugh, widow of Carl Coolbaugh, and Roy Coolbaugh deeded the Harr property to Jennie and Agnes Ruede. This deed contained a description of the right-of-way and was recorded in 1938. In 1943, Agnes Ruede, as survivor of herself and Jennie Ruede, conveyed this property to plaintiffs. This deed was recorded May 15, 1943, but on February 1, 1936, Ethel A. Coolbaugh, widow of Carl Coolbaugh, and Roy Coolbaugh conveyed the Wells property to Clifford Coolbaugh by quitclaim deed. The deed contained no reservation of a right-of-way. This deed was recorded January 3, 1944. It thus appears that when Ethel A. Coolbaugh and Roy Coolbaugh deeded to the Ruedes in 1937, and attempted to grant an easement over the Wells property, they had no title to the Wells property as they had already deeded this property to Clifford Coolbaugh and wife. It also appears that Clifford Coolbaugh and wife or the Wells were in possession of their property prior to the time that plaintiffs occupied their property. In the case at bar, plaintiffs had actual knowledge of defendants' possession prior to the time plaintiffs acquired title to their property.

In *American Cedar & Lumber Co.* v. *Gustin*, 236 Mich 351, 359, we said:

"It is elementary that as a general rule possession of real estate is constructive notice of title in the possessor."

See, also, 74 ALR 355.

In *Fraser* v. *Fleming,* 190 Mich 238, we said:

"Constructive notice by possession is equal to constructive notice by record."

In *Converse* v. *Blumrich,* 14 Mich 109, 120 (90 Am Dec 230), we said:

"A person is chargeable with constructive notice where, having the means of knowledge, he does not use them. *Mayor and City Council of Baltimore* v. *Williams,* 6 Md 235. If he has knowledge of such facts as would lead any honest man, using ordinary caution, to make further inquiries, and does not make, but on the contrary studiously avoids making such obvious inquiries, he must be taken to have notice of those facts, which, if he had used such ordinary diligence, he would readily have ascertained. *Whitbread* v. *Boulnois,* 1 Y & C Ex 303 (160 Eng Rep 123)."

Under the circumstances of this case the plaintiffs cannot claim a right-of-way over defendants' property. The decree of the circuit court should be reversed and plaintiffs' bill of complaint dismissed, with costs to defendants.

REID, J. Defendants Coolbaughs' possession was not inconsistent with plaintiff's easement in question and, lacking the quality of being adverse, was no notice to plaintiffs. See *Greve* v. *Caron, infra.* In the cases cited by Mr. Justice SHARPE, the possession was adverse, and thus was notice.

Plaintiffs, owners of the dominant estate, obtained a warranty deed of their premises including the easement in question, May 14, 1943, and recorded the deed on the next day. They had been given an

option, February 4, 1943, went into possession in March, drove in and out over the right-of-way in question before obtaining the option and during their possession under the option, without interference and without warning from any one that their rights under the easement were in dispute or that their grantor did not have a right to convey the easement. Their grantor's (Mrs. Ruede's) right so to convey was on record in 1937 and the right-of-way in question was in use since 1924, but prior to plaintiffs' grantor's receiving title, a quitclaim deed without reservation of the right-of-way of the lands crossed by the easement had been given by the then owners of both the dominant estate and the servient estate, to defendants Coolbaugh in 1936; but defendants did not put their deed on record until January 3, 1944. Defendants Coolbaugh lived on their lands, the servient estate, and had lived in the neighborhood many years. From 1920 to 1927, defendant Clifford Coolbaugh with other members of the Coolbaugh family had lived in what is now the plaintiffs' house, during which period there arose the necessity for and creation of the right-of-way in question because a high embankment was thrown up in front of the house, shutting off access to the road in front of the house. According to the testimony of Roy Coolbaugh, the Coolbaugh family then began using the right-of-way now in dispute. Defendant Clifford Coolbaugh must have known about the easement, and knew there was no way in and out for plaintiffs except over the right-of-way in dispute or across some other lands owned by defendants Clifford Coolbaugh and wife.

Plaintiffs' occupancy of the house and their use and to that extent possession of the now disputed right-of-way as a means of access during their option to purchase, was notice to defendants of their rights under their option, yet defendants Coolbaugh

did not then make known to them that their deed covered the easement, did not then block plaintiffs' use of the easement, so that plaintiffs closed the deal for the purchase in total ignorance of the fact that defendants Coolbaughs' deed covered the right-of-way with no reservation of it. Defendants Coolbaughs' conduct was inequitable.

Plaintiffs remained in undisturbed use of the easement for 5 years after their purchase. Defendant Clifford Coolbaugh testified that after the trouble arose later, over the easement,

"I put the posts in there [referring to way of access across defendants' other lands] so Mr. Harr wouldn't use the DUR as a public drive. *He would have to seek ingress and egress to his property by way of the so called right-of-way.*" (Italics supplied.)

Plaintiffs were hemmed in by a bank about 14 feet high that goes down into a viaduct, dangerous and impractical as a means of access to their property.

The fact that when plaintiffs bought their premises from the record owner of the title, defendants were in possession of the adjacent lands without blocking or denying to plaintiffs the easement in question, was no notice to plaintiffs that defendants' deed covered the easement. The easement was in actual use by others than Coolbaughs. Coolbaughs therefore were not in adverse possession of the very thing that plaintiffs were buying, to-wit, the easement in question, as distinguished from the lands traversed by the right-of-way.

"The maintenance of a gate across an alleyway at the street, even though continuous, would not constitute an obstruction to the way or result in its loss by ouster or adverse possession, if it permitted use of the way, since the owner of the servient es-

tate may make any use of the premises *not incon-sistent with the easement."   Greve* v. *Caron,* 233 Mich 261 (per syllabus 7).   (Italics supplied.)

CL 1948, § 565.29 (Stat Ann 1953 Rev § 26.547), is, in part, as follows:

"Every conveyance of real estate within the State hereafter made, which shall not be recorded as pro-vided in this chapter, shall be void as against any subsequent purchaser in good faith and for a valua-ble consideration, of the same real estate or any por-tion thereof, whose conveyance shall be first duly recorded."

"The presumption of law is, that a subsequent purchaser, who has got his deed first recorded, is a bona fide purchaser without notice, until the con-trary is made to appear."   *Godfroy* v. *Disbrow,* Walk Ch (Mich) 260 (per syllabus 7), cited with ap-proval in *Runyon* v. *Smith,* 18 F 579, 580, and in many Michigan decisions.

"Our registry laws   *   *   *   for the purpose of protecting an innocent purchaser, give him what he supposed, and *from an examination of the records had a right to suppose,* he was acquiring by his pur-chase, and to this extent cut off the previous pur-chaser who negligently failed to record his convey-ance."   *Burns.* v. *Berry,* 42 Mich 176, 180.   (Italics supplied.)

Examination of the records is the extent of the diligence suggested by the *Burns Case* to be exer-cised by a purchaser in good faith and without actual notice, who thereby and by his prior recordation, becomes protected in his title.

Plaintiffs' grantor had received a deed of their house and premises together with the easement in question from the mother and brother of defendant Coolbaugh.

Plaintiffs were not obligated to presume that their grantor would intentionally commit a fraud upon

them by deeding to them the easement in question without right so to do. Because the right-of-way was wide open to them without obstruction, plaintiffs were not obliged to make personal inquiries as to whether the terms of Coolbaughs' unrecorded deed would defeat their easement, with Coolbaugh saying nothing and nothing being done by any person to warn them; it must have seemed to plaintiffs that the residence would not be found to have been occupied with no lawful means of ingress and egress. The testimony of defendant Coolbaugh himself shows that there is no other means of ingress and egress except by the easement in question. To rule that intending purchasers must make inquiries concerning the precise terms of an unrecorded deed under such circumstances, would be to defeat the very purpose of the above-quoted statute and would subject purchasers to endless vagaries and uncertainties of unrecorded instruments.

"The purpose of the recording law is that the true state of the title be represented," *i.e.,* in the public records. See *Grand Rapids National Bank* v. *Ford,* 143 Mich 402, 406 (114 Am St Rep 668, 8 Ann Cas 102). The purpose, further, is to protect an innocent purchaser. See *Burns Case, supra.*

"Where, prior to the purchase of land abutting upon a village street, a railway company has, with the consent of the owner of such land, laid in the street in front of the premises purchased a single track of its road, and is operating cars thereon, such condition is notice to the purchaser of a right to maintain such track; and his easement in the street, as owner of abutting land, is, to the extent of such possession and user, affected thereby. But *such right will not be affected by an unrecorded deed* from his grantor, executed more than 6 months prior, giving to the company permission to lay additional tracks, if, at the time of his purchase, the purchaser

acts in good faith, and has no knowledge of the existence of such conveyance." *Varwig* v. *Cleveland, C., C. & St. L. R. Co.* (syllabus), 54 Ohio St 455 (44 NE 92). (Italics supplied.)

It seems unlikely that plaintiffs would have bought the house without the actual and honest belief that the easement was rightfully theirs. They are, in every sense, purchasers in good faith without notice. The trial judge correctly so held. Their prior recordation gives them the title to the easement, that is, the right to use it. Coolbaugh's codefendants (his grantees) are in no better position than Coolbaugh himself.

The decree appealed from, recognized and determined plaintiffs' perpetual right-of-way and permanently enjoined defendants from interfering with plaintiffs' use and enjoyment of it. That decree is affirmed. Costs to plaintiffs.

DETHMERS, C. J., and ADAMS, BUTZEL, CARR, BUSHNELL, and BOYLES, JJ., concurred with REID, J.